UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DREAM F. BENETTI,
  *formerly known as Tradra L. Garner,*

    Plaintiff,

  v.                                                Case No. 23-CV-1602-SCD

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## DECISION AND ORDER

Dream Benetti (then known as Tradra Garner) applied for supplemental security income way back in August 2014. *See* R. 311–16, 336–46, 1635.[1] She alleged that she became disabled in 1996 due to post-traumatic stress disorder, bipolar disorder, and depression. The Social Security Administration denied her claim at the state-agency level, *see* R. 149–81, and following a hearing by an administrative law judge, *see* R. 9–72. The agency's Appeals Council denied Benetti's request for review, *see* R. 2–6, making the ALJ's decision a final decision of the Commissioner of the Social Security Administration, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)).

Benetti sought judicial review, and the district court remanded the matter to the Commissioner pursuant to a stipulation. *See* R. 1086–99. On remand, the Appeals Council vacated the ALJ's decision and remanded the matter to an ALJ for further proceedings.

---

[1] The transcript is filed on the docket at ECF No. 10-1 to 10-7.

R. 1100–04. The ALJ held another hearing and issued another unfavorable decision. *See* R. 990–1065.

Benetti again sought judicial review, and again the matter was remanded for further proceedings. *See Garner v. Kijakazi*, No. 21-cv-825-JPS (E.D. Wis.).[2] The Appeals Council vacated the second ALJ decision and remanded the matter to a new ALJ to reevaluate the medical opinion evidence and, if necessary, reassess Benetti's residual functional capacity. *See* R. 1702–08. Specifically, the Appeals Council indicated that the ALJ gave significant weight to the findings of the reviewing state-agency psychologists but failed to adopt all those findings in the assessed RFC (or explain why they were not adopted), the ALJ didn't explain how the assessed RFC accommodated Benetti's social interaction limitations, and the ALJ failed to provide good reasons for assigning little weight to the opinions of Benetti's treating psychotherapist, Rhea Steinpreis. The Appeals Council also noted that Dr. Steinpreis' opinions appeared consistent with the opinions of Basil Maduka and Daina Westerman, other providers responsible for Benetti's psychiatric care. After another hearing, in September 2023, an ALJ issued another unfavorable decision. *See* R. 1629–91. The ALJ's 2023 decision became the final decision of the Commissioner after remand because the Appeals Council did not assume jurisdiction over the case. *See* 20 C.F.R. §§ 416.1455, 416.1484.

In November 2023, Benetti filed this action seeking judicial review of the Commissioner's 2023 decision denying her claim for benefits under the Social Security Act, 42 U.S.C. § 405(g). *See* ECF No. 1. The matter was reassigned to me after all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). See ECF Nos. 4, 6, 7. Benetti argues that the latest ALJ failed to comply with the Appeals Council's

---

[2] Records from that district court action are not in the administrative transcript.

remand order and erred in evaluating the opinion evidence. *See* ECF No. 14. She seeks to vacate the 2023 decision and an award of benefits. The Commissioner agrees that the ALJ's evaluation of the medical opinion evidence did not comply with the Appeals Council's 2022 remand order. *See* ECF No. 23. However, according to the Commissioner, an award of benefits is not warranted; the Commissioner says the matter should be remanded again for further proceedings.

"When a reviewing court remands to the Appeals Council, the ordinary remedy is a new hearing before an administrative law judge. In unusual cases, however, where the relevant factual issues have been resolved and the record requires a finding of disability, a court may order an award of benefits." *Kaminski v. Berryhill*, 894 F.3d 870, 875 (7th Cir. 2018) (collecting cases). The record requires a finding of disability only when the evidence is so lopsided that it "can yield but one supportable conclusion"—that the applicant qualifies for disability benefits. *Martin v. Saul*, 950 F.3d 369, 376 (7th Cir. 2020) (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

Benetti contends that all factual issues have been resolved and that, if the opinion evidence were given its proper weight, the record would compel the conclusion that she has been unable to work since she applied for benefits in 2014.[3] "Under the 'treating physician rule' that applies to [Benetti's] claim, a judge should give controlling weight to the treating physician's opinion as long as it is supported by medical findings and consistent with substantial evidence in the record." *Kaminski*, 894 F.3d at 874 (citing 20 C.F.R.

---

[3] Benetti also suggests that she's entitled to benefits because her claim has been pending for over ten years and because it's already been remanded twice. *See* ECF No. 14 at 17. Her frustration is understandable. Nevertheless, the Seventh Circuit has clearly stated that "[o]bduracy is not a ground on which to award benefits; the evidence properly in the record must demonstrate disability." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 357 (7th Cir. 2005).

3

§ 404.1527(c)(2); *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018)); *see also* 20 C.F.R. § 416.927(c)(2). "When controlling weight is not given, an ALJ must offer 'good reasons' for doing so, after having considered" several factors, including the length, nature, and extent of the claimant's relationship with the treating physician; the frequency of examination; whether the opinion is supported by relevant evidence; the opinion's consistency with the record as a whole; and whether the physician is a specialist. *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016) (citing *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010)); *see also* 20 C.F.R. § 416.927(c).

An ALJ must consider those same factors when evaluating "[o]pinions from medical sources who are not acceptable medical sources." 20 C.F.R. § 416.927(f). "An ALJ must minimally articulate its reasons for discounting non-treating sources' opinions but need not consider explicitly every factor listed under [the regulations]." *Grotts v. Kijakazi*, 27 F.4th 1273, 1277 (7th Cir. 2022). "Rather, an ALJ only needs to 'explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning.'" *Id.* (quoting 20 C.F.R. § 404.1527(f)(2)).

Benetti's mental health providers all believe that she has significant functional limitations. Benetti saw Dr. Steinpreis for therapy several times a month from March 2011 until September 2014. *See* R. 554, 571–92. Dr. Steinpreis indicated that Benetti's PTSD—which stemmed from a violent abduction and rape in 2001—was exceptionally debilitating and one of the worst cases Dr. Steinpreis had seen in her twenty-five years of practice. R. 592. Dr. Steinpreis opined that Benetti had extreme limitations in her activities of daily living and maintaining social functioning; constant deficiencies in concentration, persistence, or pace; and continual episodes of deterioration or decompensation in work-like settings. *See* R. 438–

563. Dr. Steinpreis further opined that Benetti likely would be absent from work more than three times each month, as she rarely left her home aside from necessary appointments.

After Dr. Steinpreis terminated the treatment relationship, Benetti saw Westerman (a licensed professional counselor) for substance abuse counseling and psychotherapy and Maduka (an advanced practice nurse prescriber specializing in psychiatry) for medication management. *See* R. 614–779, 782–827, 2294–2309, 2315–22, 2336–38, 2357–60, 2367–69, 2373–75, 2413–15, 2417–23, 2431–46, 2643–47. In February 2015, Westerman submitted a letter in support of Benetti's disability application indicating that, although Benetti had made some progress, she continued to experience "significant anxiety, hypervigilance, irritability, agoraphobia, and extreme discomfort [in] the presence of strangers and in group situations, including family gatherings[] and her children's school-related events." R. 780. Given the limited progress in reducing symptoms, Westerman concluded that Benetti was not capable of working any job and may never be capable of working outside her home. In January 2016, Maduka completed a mental impairment questionnaire indicating that Benetti had moderate-to-marked limitations in concentration and persistence; had marked limitations in social interactions; had moderate-to-marked limitations in adaptation; and would likely be absent from work two or three times per month as a result of her impairments or treatment. *See* R. 828–32. Finally, in September 2020, Westerman completed a medical source statement indicating that Benetti had no useful ability to mentally function in a regular work setting, experienced repeated episodes of deterioration or decompensation in work-like settings, would be off task more than twenty percent of an eight-hour workday, and would miss more than four days of work each month due to her impairments or treatment. *See* R. 1488–92.

5

Case 2:23-cv-01602-SCD   Filed 11/08/24   Page 5 of 7   Document 25

Benetti would be disabled if the treating providers' opinions were given controlling or great weight. If credited, those opinions arguably satisfy the criteria for presumptively disabling anxiety disorder (Listing 12.06) and PTSD (Listing 12.15). Also, the vocational expert testified that no jobs would be available to a person who was off task more than ten percent of the workday, who was absent more than one day during the ninety-day probationary period, or who couldn't handle occasional contact from supervisors during the training period. *See* R. 1688–89.[4]

Despite the similar opinions from Benetti's mental health providers, it appears possible that an ALJ could identify valid reasons for giving those opinions less than controlling or great weight. First, Westerman's opinion that Benetti was not capable of working is an issue reserved for the Commissioner. *See* 20 C.F.R. § 416.927(d). Second, the providers' own treatment notes do not always appear to support their extreme opinions. Although Dr. Steinpreis said that Benetti often missed appointments, her mental health reports say otherwise, *see* R. 476, 508, 525, 533, 551, 560, and the record does not reflect missed appointments with Westerman or Maduka, aside from the early months of the pandemic, *see* R. 1513. Likewise, while the providers opined that Benetti had significant limitations concentrating, persisting, or maintaining pace, mental status examinations consistently reflect normal, or at worse fair, concentration and attention. *See* R. 623, 705, 2028, 2030, 2199, 2277. Also, treatment notes from Westerman and Maduka show that Benetti's symptoms improved slightly with medication and therapy, including increased global functioning scores and less anxiety. *See* R. 713–14, 719–20, 725–27, 737, 759, 763–65, 769–70, 808, 814–16, 2221–22, 2225–27, 2253–55, 2261–63, 2266–67, 2338, 2423.

---

[4] The expert's testimony about acceptable absenteeism after the probationary period was inaudible.

Finally, the record contains other evidence that is inconsistent with the opinions of Benetti's mental health providers. For example, the state-agency psychologists who reviewed the medical records found that Benetti did not have any marked or extreme mental limitations. *See* R. 151–81. Benetti insists that the reviewing psychologists' findings, which were made in 2015, were stale by the time the ALJ issued her decision in 2023. The psychologists, however, had access to all of Dr. Steinpreis' records. Moreover, Benetti does not identify any new diagnoses or significant medical findings that arose during the intervening eight years that likely would change the psychologists' assessments. Benetti's symptoms largely remained the same as they were prior to 2015 and, if anything, they appeared to improve somewhat.

In sum, the ALJ erred in not complying with the Appeals Council's 2022 remand order and in evaluating the opinion evidence. Nevertheless, because the record does not conclusively show that Benetti is disabled, the appropriate remedy is to remand, not to award benefits.[5] Accordingly, for all the foregoing reasons, I **REVERSE** the Social Security Commissioner's final decision and **REMAND** this action to the Commissioner pursuant to sentence four of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for further proceedings consistent with this decision. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 8th day of November, 2024.

_____
STEPHEN C. DRIES
United States Magistrate Judge

---

[5] Indeed, in the last judicial remand order, Judge Stadtmueller stated that the record contains "conflicting evidence as to the functional impact of [Benetti's] impairments" and that Benetti had not shown "that the record supports a *clear* entitlement to benefits." *See* ECF No. 26 at 5, *Garner v. Kijakazi*, No. 21-cv-825-JPS (E.D. Wis. June 2, 2022). Benetti has not presented a sufficient reason to disturb that finding.

7